**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **RUTHIE HULLETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:22-cv-651-ALM-KPJ** |
| **DEUTSCHE BANK NATIONAL** | § | |
| **TRUST COMPANY, as TRUSTEE,** *et* | § | |
| *al.***,** | § | |
| | § | |
| **Defendants.** | | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are:[1]

1. Defendants Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2004-HE1, Mortgage Pass-Through Certificates, Series 2004-HE1 ("Deutsche Bank") and Select Portfolio Servicing, Inc.'s ("SPS") Motion to Dismiss ("Deutsche Bank and SPS's Motion to Dismiss") (Dkt. 8);

2. Defendant State of Texas's ("State of Texas") Motion to Dismiss ("Texas's Motion to Dismiss") (Dkt. 16);

3. Defendant Hughes Watters Askanase, LLP's ("HWA") Motion to Dismiss ("HWA's Motion to Dismiss") (Dkt. 17);

4. Plaintiff Ruthie Hullett's ("Plaintiff") Motion to Compel Discovery ("Plaintiff's Motion to Compel Discovery") (Dkt. 18);

5. Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment") (Dkt. 23);

6. Defendant Judge Brian K. Gary's ("Judge Gary") Motion to Dismiss ("Judge Gary's Motion to Dismiss" and together with Deutsche Bank and SPS's Motion to Dismiss, Texas's Motion to Dismiss, and HWA's Motion to Dismiss, the "Motions to Dismiss") (Dkt. 27); and

---

[1] The Court refers to CM/ECF pagination rather than internal pagination for all citations.

7. Plaintiff's "Request for Hearing: In Common Law Court of Equity" ("Plaintiff's Motion for Hearing", and together with Plaintiff's Motion to Compel Discovery and Plaintiff's Motion for Summary Judgment, "Plaintiff's Motions") (Dkt. 32).

For the reasons that follow, the Court recommends Judge Gary's Motion to Dismiss (Dkt. 27) be **GRANTED IN PART** and **DENIED IN PART**. The Court recommends Texas's Motion to Dismiss (Dkt. 16) and HWA's Motion to Dismiss (Dkt. 17) be **GRANTED**. The Court further recommends Deutsche Bank and SPS's Motion to Dismiss (Dkt. 8) be **GRANTED IN PART AND DENIED IN PART**. The Court also recommends Plaintiff's Motion for Summary Judgment (Dkt. 23) be **DENIED WITHOUT PREJUDICE**. Finally, the Court **ORDERS** Plaintiff's Motion to Compel Discovery (Dkt. 18) and Plaintiff's Motion for Hearing (Dkt. 32) be **DENIED WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A.  Plaintiff's Complaint

On July 28, 2022, Plaintiff, *proceeding pro se* and *in forma pauperis*, filed a complaint against Defendants Deutsche Bank, SPS, HWA, the State of Texas, and Judge Gary. *See* Dkt. 1. On August 30, 2022, Plaintiff filed an amended complaint against all Defendants (the "Amended Complaint") (Dkt. 7).

In the Amended Complaint (Dkt. 7), Plaintiff alleges the following: "[o]n or about August 2003, [Plaintiff] purchased a home and obtained a mortgage loan from the Ames Home Loans, in the approximate amount [of] $112,000.00." *Id.* at 7. Plaintiff alleges her "signature on [the] promissory note created the alleged loan. This created a financial asset to the lender under UCC article 8-103, and a liability to [Plaintiff]." *Id.* at 4. Plaintiff asserts "Plaintiff originally signed a promissory note believing she was creating a mortgage account. She was not told that her loan was subprime nor that it would be sold into a pooling and servicing agreement. This was intentional

2

misrepresentation." *Id.* at 3. Plaintiff alleges "[D]efendant's accounting records will show the corporation has an offsetting liability to the homeowner pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR), and the alleged loan was always an asset to [Defendants]." *Id*. Plaintiff further asserts the "[p]romissory note was never registered as a security or transferred into Remic and subsequent taxes required to be paid were not paid." *Id.* Plaintiff alleges "[t]he state court did not have jurisdiction to foreclose because there was no witness with first hand knowledge, the original promissory note was not provided nor was the alleged contract and there was no injured party." *Id.* at 5. Plaintiff alleges "[a]s the originator of the promissory note [Plaintiff] is an undisclosed third party beneficiary to the pooling and servicing agreement" and "[a]s a beneficiary [Plaintiff] was required to have a say in all transfers and sales of title, however, the promissory note was sold at origin and multiple transfers occurred after signing, without approval or knowledge of [Plaintiff]." *Id.* at 5. Plaintiff alleges "Plaintiff's signature created the promissory note in dispute, and it was sold to the Federal Reserve in exchange for [P]laintiff's signed note." *Id.* at 8. Plaintiff asserts her "promissory note never became a registered security" and Defendants "further complicated the fraudulent process by selling their payables to another entity to remove it from their balance sheet." *Id.*

Plaintiff further alleges "[b]eginning in August 2003 and continuing until 2005 [Plaintiff] made timely payments to Countrywide home loans. Countrywide was assumed by Bank of America and then Deutsche Bank/Select Portfolio Servicing." *Id.* at 14. Plaintiff further alleges "[i]n early 2018, Select Portfolio Servicing Claimed [Plaintiff] was behind on payments and hired [a] [f]oreclosure attorney to file a foreclosure claim against [Plaintiff]." *Id.* Plaintiff alleges the foreclosure complaint was served upon Plaintiff in early 2017, and "Select Portfolio Servicing and/or the attorney operating the [f]oreclosure [s]ervices transmitted to various credit reporting

agencies, including Equifax, false adverse information about [Plaintiff], causing [her] credit to be impaired." *Id.* Plaintiff alleges the "[o]riginal loan should never have been approved. It was slated as sub prime because the lender was aware that [Plaintiff] would struggle to make the payments thereby set up [Plaintiff] for failure." *Id.* Plaintiff also alleges "[t]he wrongful foreclosure action had no injured party . . . **[c]orporations cannot sign and therefore cannot enter into any contract, with an attorney**." *Id.* at 14–15. Plaintiff also asserts "[t]his civil action filed against [Plaintiff] in State court was 'Fraudulent' because the attorneys are claiming a 'Corporation' has rights, privileges, and immunities in court, [but] common knowledge dictates a [c]orporation is an artificial person without natural rights." *Id.* at 15.

Plaintiff asserts the following causes of action: (1) breach of contract because "[n]o loan was provided to [Plaintiff], and [Defendants] failed to file evidence on the record to prove a contract existed. The original contract and an accounting of loan entries was never filed in the wrongful foreclosure case that was filed against [Plaintiff's] property," *id.* at 8, and there was "detrimental reliance" because Plaintiff "signed a lien against [her] property in return for a loan and no loan was ever provided. [Plaintiff] was tricked into repaying approximately 900.00 a month plus taxes for 30 years" and "[t]he unlawful lien against [Plaintiff's] property blocked her from selling the property and moving her family into a nicer home," *id.* at 10; (2) a "scheme to defraud" and "[t]he contract should be rescinded because the defendant did not provide full disclosure, the contract is extremely deceptive and unconscionable," *id.* at 8; and there was "unlawful deception in the original foreclosure case" because the "promissory note used to gain the court's jurisdiction in the wrongful foreclosure is fraudulent, the document was used in court as a security when it was never registered," *id.* at 10–11; (3) civil Racketeer Influenced and Corrupt Organizations ("RICO") action because "[t]he debt included the fact that exaction of a usurious interest rate rendered the

debt unlawful and that is all that is necessary to support the Civil RICO action," *id.* at 11; (4) wrongful foreclosure because "[t]he foreclosing party did not have standing to file [a] foreclosure [suit] because they have not filed evidence on the court record to verify a loan was made and or what the amount and terms of the alleged loan stated," *id.* at 12; (5) slander of title because "[D]efendants have caused to be recorded various documents including an unlawful foreclosure which constitutes slander of title," *id.* at 13; (6) violation of "Texas Revised Statutes section 17.41 Texas Business and Commerce Code, Consumer Protection Act, et seq." because "[D]efendants have engaged in a pattern of unfair practices," *id.*; (7) slander of credit because "the actions and inactions of [Defendants] have impaired [Plaintiff's] credit causing [Plaintiff] to lose the ability to have good credit," *id.*; and (8) infliction of emotional distress because "[Defendants] have intentionally or negligently taken actions which have cause [Plaintiff] severe emotional distress," *id.* at 13–14.

Plaintiff requests the following relief: "[t]his Court [v]oid the foreclosure sale process that started in 2018, and the alleged foreclosure sale that took place on March 1, 2022 based on the attorney's fraudulent misconduct mentioned in the claim"; the "actions of [Defendants] be determined to be unfair and deceptive business practices in violation of Federal Laws, and Federal Security statutes"; the "alleged debt [be] discharged, and deed returned to [P]laintiff"; the awarding of "compensatory and punitive damages provided for in the amount of 5.5 million dollars including costs and legal expenses"; the awarding of "consequential damages to be fully proved at the time of trial"; the awarding of fees and costs pursuant to the written loan agreements which bind [Defendants]"' and "any other relief that may be just or equitable." *Id.* at 17.

### B.  Motions to Dismiss

On August 31, 2022, Deutsche Bank and SPS filed Deutsche Bank and SPS's Motion to Dismiss (Dkt. 8) as to Plaintiff's Amended Complaint (Dkt. 7), arguing Plaintiff fails to state a claim under any cause of action asserted.[2] *See generally* Dkt. 8. On September 21, 2022, the State of Texas filed Texas's Motion to Dismiss (Dkt. 16), arguing Plaintiff has not alleged an injury in fact caused by the State of Texas, Plaintiff's claims against the State of Texas are barred by the Eleventh Amendment, and Plaintiff fails to state a claim because Plaintiff has not alleged specific actions taken by the State of Texas. *See generally id.* On September 30, 2022, HWA filed HWA's Motion to Dismiss (Dkt. 17), arguing Plaintiff has failed to state a claim under any cause of action, or in the alternative, the Court should convert HWA's Motion to Dismiss into a motion for summary judgment. *See generally id.* HWA further argues it is entitled to "'qualified immunity,' with respect to non-clients for actions taken in connection with representing a client in litigation" and that Plaintiff's "only allegation of actual conduct by HWA is that HWA filed a civil action in state court that was fraudulent . . . ." *Id.* at 23–24.

As Plaintiff had not timely filed a response to any of the Motions to Dismiss (Dkts. 8, 16, 17), on November 2, 2022, the Court ordered Plaintiff file a response to the Motions to Dismiss, if any, within 14 days after receipt of the Order.[3] *See* Dkt. 21. On November 7, 2022, Plaintiff filed her response in opposition to Texas's Motion to Dismiss (Dkt. 22), asserting Deutsche Bank and SPS "[w]ere aware and were active participants in fraudulent and misleading practices" and the State of Texas "had a responsibility to investigate and possibly remedy issues before they arose."

---

[2] On August 10, 2022, Deutsche Bank National Trust and SPS filed their first motion to dismiss ("Deutsche Bank and SPS's First Motion to Dismiss") (Dkt. 6). On August 30, 2022, Plaintiff filed the Amended Complaint (Dkt. 7). *See id.* On November 30, 2022, the Court ordered Deutsche Bank and SPS's First Motion to Dismiss be denied as moot as Plaintiff timely filed the Amended Complaint (Dkt. 7). *See* Dkt. 29.

[3] Summons for Judge Gary had not been returned executed by November 2, 2022, nor has it yet been returned executed according to the record. On November 15, 2022, Judge Gary filed Judge Gary's Motion to Dismiss (Dkt. 27).

*Id.* at 2. Plaintiff further asserts "[t]he request to dismiss that was filed in August by [HWA] was responded to on August 30[th], by the filing of a second[] amended claim with requested clarification of claims." *Id.*

On November 15, 2022, Judge Gary filed Judge Gary's Motion to Dismiss (Dkt. 27), wherein Judge Gary argues Plaintiff's claims are frivolous, Plaintiff lacks standing to bring this lawsuit against Judge Gary, Judge Gary is entitled to Eleventh Amendment immunity as the suit is brought against him in his official capacity, Judge Gary is entitled to judicial immunity, the *Rooker-Feldman* doctrine bars Plaintiff's claims, and Plaintiff fails to state a claim for which relief may be granted. *See generally id.*

### C.  Plaintiff's Motion to Compel Discovery, Motion for Summary Judgment, and Motion for Hearing

On October 12, 2022, Plaintiff filed Plaintiff's Motion to Compel Discovery (Dkt. 18), requesting the Court compel Defendants "to fully comply with [their] discovery obligations" and requesting the following documents: the pooling and servicing agreement for series 2004 HE-1 mortgage pass through certificate, 1099 OID report, FR2046 balance sheet, S-3/A registration statement, 424-B5 prospectus, and RC-S and RC-B call schedules. *Id.* at 2–3. On October 13, 2022, Deutsche Bank and SPS filed a response in opposition (Dkt. 19) arguing Plaintiff has not attached or referenced any discovery request in Plaintiff's Motion to Compel Discovery (Dkt. 18), Plaintiff has failed to comply with the meet and confer requirements and the certificate of conference requirements under the Eastern District of Texas Local Rules, and Plaintiff cannot show that the documents she is seeking are discoverable. *See* Dkt. 19 at 2.

On November 7, 2022, Plaintiff filed Plaintiff's Motion for Summary Judgment (Dkt. 23), arguing that "[d]ue to the inability and/or refusal to present the requested documents, [Plaintiff] must assume such documents do not exist and that all previous claims of fraud, GAAP and RICO

violations as well as wrongful foreclosure, unfair collections and civil rights violations are valid and correct." *Id.* at 5. On November 14, 2022, Deutsche Bank and SPS filed a response in opposition (Dkt. 25) arguing Plaintiff has failed to state a claim. *See generally id.* On November 21, 2022, the Court ordered that all discovery, Rule 26 conference requirements, and scheduling requirements be stayed pending resolution of the Motions to Dismiss (Dkts. 8, 16, 17, 27) and Plaintiff's Motions (Dkts. 18, 23, 32)

On January 23, 2023, Plaintiff filed Plaintiff's Motion for Hearing (Dkt. 32), wherein Plaintiff "enters a new attempt to clarify the claims and request for relief" and to "respond[] to Judge Gary's request for dismissal." *Id.* at 2. In Plaintiff's Motion for Hearing (Dkt. 32), Plaintiff reasserts her claims in the Amended Complaint (Dkt. 7) and argues, in response to Judge Gary's Motion to Dismiss (Dkt. 27), the "[c]laims against Judge Gary in his official capacity relate to the fact that he granted judgment without consideration of the facts . . . ." Dkt. 32 at 6. In the body of Plaintiff's Motion for Hearing (Dkt. 32), Plaintiff does not request a hearing. *See generally id.*

## II. LEGAL STANDARD

### A. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(1) provides that a party may assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 F. App'x 406, 409 (5th Cir. 2016) (per curiam) (citing *Ramming*, 281 F.3d at 161). "Addressing Rule 12(b)(1) arguments first 'prevents a court without jurisdiction from prematurely dismissing

a case with prejudice.'" *Gonzalez v. Mayhill Behav. Health, LLC*, No. 4:19-cv-230, 2019 WL 2395274, at *1 (E.D. Tex. June 6, 2019) (quoting *Ramming*, 281 F.3d at 161). Thus, "[w]here a court lacks the statutory power to adjudicate a case, it must dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Boy Scouts of Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 3:15-cv-2420, 2016 WL 495599, at *2 (N.D. Tex. Feb. 8, 2016) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### B.  Rule 12(b)(6) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion

to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Additionally, when the plaintiff is proceeding *in forma pauperis*, courts must dismiss the case if, at any time, it is determined the complaint fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("The district court may dismiss an *in forma pauperis* proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met." (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990))). In reviewing a plaintiff's complaint under Section 1915, courts apply the same standard that is applied to motions filed under Federal Rule of Civil Procedure 12(b)(6). *See Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016) (citing *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998)).

## III. ANALYSIS

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction "'to entertain collateral attacks on state court judgments.'" *Kam v. Dall. County*, 756 F. App'x 455, 455 (5th Cir. 2019) (per curiam) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)); *see also Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) ("[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.") (citation omitted). Under the *Rooker-Feldman* doctrine, a federal district court lacks jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

10

*Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine has four elements: "(1) a state court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state court judgment." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017) (citation omitted). The *Rooker-Feldman* doctrine prohibits federal review of "the precise claims presented to the state court," as well as "claims that are 'inextricably intertwined' with a state court decision." *Kam*, 756 F. App'x at 455–56 (quoting *Burciaga*, 871 F.3d at  384–85). "[T]he Fifth Circuit has held 'that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits.'" *Aikins v. Pitre*, No. 3:18-cv-2341, 2018 WL 5634214, at *3 (N.D. Tex. Sept. 21, 2018), *R. & R. adopted*, 2018 WL 5621490 (N.D. Tex. Oct. 30, 2018) (quoting *Turner v. Cade,* 354 F. App'x 108, 111 (5th Cir. 2009) (per curiam)) (cleaned up). Additionally, "*Rooker-Feldman* is a jurisdictional doctrine that the Court can raise *sua sponte*." *Bergin v. Texas*, No. 4:20-cv-17, 2022 WL 874172, at *3 (E.D. Tex. Mar. 23, 2022) (citing *Union Planters Bank Nat'l Ass'n v. Salih*, 393 F.3d 47, 460 (5th Cir. 2004)).

Judge Gary contends "all of Plaintiff's claims against Judge Gary are barred by the *Rooker-Feldman* doctrine. Plaintiff specifically asks this Court to vacate Judge Gary's state court orders regarding foreclosure issued in the state court proceedings . . . and discharge a debt and have a property deed returned to Plaintiff in the foreclosure proceedings." Dkt. 27 at 7.

As Judge Gary correctly argues, the *Rooker-Feldman* doctrine bars Plaintiff's claims that stem from the foreclosure judgment itself, including the following requests for equitable and declaratory relief: voiding the foreclosure sale, discharging the alleged debt, and returning the deed. *See Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (per

curiam) ("[The plaintiff's] claims that the foreclosure judgment or writ of possession was unlawful are barred by *Rooker-Feldman* because he is complaining of injuries caused by the state court judgments. His claims for relief for, and related to, the allegedly unlawful debt collection practices are also barred by *Rooker–Feldman* because, crucially, the only relief he sought was the setting aside of the state foreclosure judgment and staying of the execution of the writ of possession." (citing *Exxon Mobil*, 544 U.S. at 284)); *see also Morris v. Wells Fargo Bank*, 677 F. App'x 955, 957–58 (5th Cir. 2017) (holding the plaintiff's claim was barred by *Rooker-Feldman* because the plaintiff asks the "court to restore the possession of the [p]roperty that he lost in the earlier state court litigation . . . ."); *Kingman Holdings, LLC v. Plaza Home Mortg., Inc.*, No. 4:19-cv-956, 2020 WL 10357231, at *3 (E.D. Tex. May 22, 2020) ("[T]he *Rooker-Feldman* doctrine prevents jurisdiction over [the defendant's]declaratory judgment claim. That claim, seeking a declaration that the state court's decision was incorrect, falls squarely within *Rooker-Feldman*'s prohibition."); *Knigge v. CitiMortgage, Inc.*, No. 4:12cv750, 2013 WL 12140310, at *2 (E.D. Tex. May 23, 2013) ("Having reviewed the face of [the plaintiff's] live pleading, the only relief requested—other than general relief in equity—seeks to enjoin enforcement of the foreclosure and resulting judgment in the forcible detainer suit. No matter how it is couched, [the plaintiff's] complaint remains a collateral attack on the state court action and any threatened injuries flow from the state court judgment." (citing *Morris*, 443 F. App'x at 24)).

However, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims against Defendants for monetary damages. In *Truong v. Bank of America*, the Fifth Circuit held the plaintiff's claims that the defendants misled the state court into believing certain evidence in foreclosure proceedings was authentic and misled the plaintiff into foregoing her opportunity to dispute the evidence's authenticity were "independent claims over which the district court had jurisdiction." *Truong v.*

*Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013). Therefore, "'in light of the narrow ground *Rooker-Feldman* occupies,' the doctrine 'does not prohibit a plaintiff from presenting some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party.'" *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 385 (5th Cir. 2022) (quoting *Truong*, 717 F.3d at 382 (cleaned up)). Furthermore, the Fifth Circuit has emphasized that "in *Exxon Mobil*'s wake, numerous federal courts of appeal have recognized that "inextricably intertwined" does not enlarge the core holding of *Rooker* or *Feldman*. *Truong*, 717 F.3d at 385 (collecting cases). Although Plaintiff has requested injunctive and declaratory relief barred by *Rooker-Feldman*, Plaintiff's claims for damages are separate from the state court judgment itself. *See Avdeef v. Royal Bank of Scot., P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam) ("We conclude that this case does not fall within the limited set of matters subject to *Rooker–Feldman*. Critically, [the plaintiff's] complaint seeks relief *other than* review and reversal of the adverse state-court judgment: he requests damages for alleged constitutional violations and torts committed by the parties to the state-court action . . . The mere fact that [the plaintiff's] claims appear to be 'inextricably intertwined' with the state-court judgment is not enough to invoke *Rooker-Feldman*'s jurisdictional bar." (citing *Truong*, 717 F.3d at 384–85)) (emphasis in original);

Therefore, Plaintiff's claims stemming from the state court judgment, including her claims for injunctive and declaratory relief, are barred by the *Rooker-Feldman* doctrine. However, Plaintiff's claims for monetary damages against her state court opponents—Deutsche Bank, SPS,

and HWA—are sufficiently independent from the state court judgment that they are not barred by *Rooker-Feldman*.[4]

### B. Eleventh Amendment Immunity

The Supreme Court has "made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting states." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (citations omitted). "Eleventh Amendment immunity extends to suits brought against a state by its own citizens as well as by citizens of another state or foreign country." *Yowman v. Jefferson Cnty. Cmty. Supervision & Corrs. Dep't*, 370 F. Supp. 2d 568, 582 (E.D. Tex. 2005) (collecting cases). "Even in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, (1997)). "Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state." *Warnock v. Pecos County*, 88 F.3d 341, 342 (5th Cir. 1996) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Because Eleventh Amendment immunity "deprives the court of jurisdiction, . . . the barred claims 'can be dismissed only under Rule 12(b)(1) and not with prejudice.'" *Chalmers v. Marks*, No. Civ.A.3:03cv468, 2003 WL 21468509, at *2 (N.D. Tex. June 19, 2003) (quoting *Warnock*, 88 F.3d at 343); *Armstrong v. Cumberland Acad.*, 549 F. Supp. 3d 543, 549 (E.D. Tex. 2021) (quoting *Warnock*, 88 F.3d at 343) (same).

---

[4] In the Amended Complaint (Dkt. 7), Plaintiff does not allege any facts as to Judge Gary or the State of Texas. As discussed below, the Court finds the State of Texas and Judge Gary are entitled to sovereign immunity. Thus, the Court lacks jurisdiction to consider Plaintiff's claims against these Defendants regardless of whether such claims are barred by *Rooker-Feldman*.

The State of Texas asserts it is entitled to sovereign immunity under the Eleventh Amendment. *See* Dkt. 16 at 4. Judge Gary also asserts he is entitled to sovereign immunity under the Eleventh Amendment and may not be sued for monetary damages in his official capacity. *See* Dkt. 27 at 5.

The State of Texas has not consented to suit in federal court and is entitled to sovereign immunity for breach of contract and tort claims, as well as 42 U.S.C. Section 1983 claims. *See Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 367 (5th Cir. 2012) (per curiam) ("No exception applies to [the plaintiff's] § 1983 claims, because there has been no abrogation by Congress, nor waiver by the State of Texas. [The plaintiff's] state law actions are also barred by Texas's sovereign immunity.") (internal citations omitted). Additionally, the State of Texas is entitled to sovereign immunity for RICO claims, as "Congress has not unequivocally expressed its intention to abrogate the states' sovereign immunity from claims brought pursuant to RICO." *Gaines v Tex. Tech Univ.*, 965 F Supp 886, 889 (N.D. Tex. 1997) (citing *Bair v Krug*, 853 F2d 672, 674–75 (9th Cir 1988)); *see also Rollins v. Greenberg Traurig, LLP*, No. 4:19-cv-1515, 2021 WL 3556205, at *3 (S.D. Tex. Aug. 11, 2021) (collecting cases). Thus, as the State of Texas is entitled to sovereign immunity, the Court has no jurisdiction to consider Plaintiff's claims against the State of Texas.

Judge Gary is also entitled to sovereign immunity for claims brought against him in his official capacity. The Fifth Circuit "has held that for purposes of sovereign immunity, county district-court judges are 'undeniably elected state officials.'" *Russell v. Jones*, 49 F.4th 507, 513 (5th Cir. 2022) (quoting *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986)). In the Amended Complaint (Dkt. 7), Plaintiff does not appear to allege any action or inaction taken by Judge Gary. *See generally id.* In Plaintiff's Motion for Hearing (Dkt. 32), Plaintiff asserts the

"[c]laims against Judge Gary in his official capacity relate to the fact that he granted judgment without consideration of the facts . . . ." *Id.* at 6. "Because 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity,' sovereign immunity generally bars individual suits against state officials in their official capacities." *Russell*, 49 F.4th at 513 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The State of Texas has not consented to this suit and, thus, Judge Gary is entitled to sovereign immunity as to Plaintiff's claims for monetary damages against Judge Gary in his official capacity. *See Davis v. Tarrant County*, 565 F.3d 214, 228 (5th Cir. 2009) ("Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors.") (citations omitted).

Therefore, Plaintiff's claims against the State of Texas must be dismissed without prejudice; and Plaintiff's claims against Judge Gary for monetary damages must be dismissed without prejudice.

### C.  Judicial Immunity

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). When assessing the entitlement to judicial immunity, the Fifth Circuit has held that "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Judicial immunity "can be overcome in two sets of circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Ballard*, 413 F.3d at 515 (quoting *Mireles*, 502 U.S. at 11–12). A judge's actions are judicial in nature if they are "normally performed by a judge" and

16

the parties affected "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Judge Gary asserts he is entitled to judicial immunity and, as such, Plaintiff's claims against Judge Gary in both his official and individual capacity must be dismissed. *See* Dkt. 27 at 6–7. As discussed above, Plaintiff does not reference Judge Gary in the Amended Complaint (Dkt. 7) but clarifies in Plaintiff's Motion for Hearing (Dkt. 32) that her "[c]laims against Judge Gary in his official capacity relate to the fact that he granted judgment without consideration of the facts . . . ." Dkt. 32 at 6.

Plaintiff's allegations are not sufficient to overcome Judge Gary's judicial immunity, as Plaintiff's allegations are clearly related to actions taken by Judge Gary in his judicial capacity. *See Avdeef*, 616 F. App'x at 674 ("[J]udges are entitled to absolute immunity for all actions taken in their judicial capacity, *even when allegedly rooted in malice and corruption* . . . ." (citing *Ballard*, 413 F.3d at 515)); *see also Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("Judges are immune from damages claims arising out of acts performed in the exercise of their judicial functions, even when the judge is accused of acting maliciously." (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972); *Stump*, 435 U.S. at 359); *Brown v. Anderson*, No. 3:16-CV-0620, 2016 WL 6903730 at *3 (N.D. Tex. Oct. 5, 2016), *R. & R. adopted*, 2016 WL 6893723 (N.D. Tex. Nov. 21, 2016) ("Plaintiff's lawsuit against the justices . . . cannot succeed and it must be dismissed on the basis of absolute immunity.") (citation omitted); *Crissup v. Greenwell*, No. 2:13-cv-137, 2013 WL 12090341, at *2 (S.D. Tex. July 8, 2013), *R. & R. adopted*, 2013 WL 12090342 (S.D. Tex. Aug. 7, 2013) (citations omitted).

While Plaintiff appears to allege the state court did not have jurisdiction, *see* Dkt. 7 at 5, the 379th District Court is a court of general jurisdiction that may consider a foreclosure

proceeding. *See Stanford v. Kelley*, No. 4:21-cv-388, 2022 WL 668287, at *4 (E.D. Tex. Feb. 13, 2022), *R. & R. adopted*, 2022 WL 657966 (E.D. Tex. Mar. 4, 2022) ("The 380th District Court is a state district court with general jurisdiction . . . [the judge's] actions—namely issuing an Order of Foreclosure and entering summary judgment on [the plaintiff's] claims—were undoubtedly judicial functions."); *see also Paup v. Texas*, No. 6:16-cv-417, 2017 WL 9289648, at *10 (E.D. Tex. Jan. 31, 2017), *R. & R. adopted*, 2017 WL 1129906 (E.D. Tex. Mar. 27, 2017); *Bowling v. Dahlheimer*, 2019 WL 3712025, at *4–5 (E.D. Tex. Aug. 7, 2019).

Therefore, to the extent Plaintiff is asserting claims for monetary damages against Judge Gary in his individual capacity, Plaintiff's claims must be dismissed with prejudice.[5]

### D.  Failure to State a Claim

Plaintiff's claims for equitable and declaratory relief are barred by the *Rooker-Feldman* doctrine, and Plaintiff's claims for monetary damages against the State of Texas and Judge Gary are barred under sovereign immunity and judicial immunity. Additionally, as discussed above, Judge Gary is entitled to judicial immunity and is immune from Plaintiff's suit in both his official and individual capacities. Thus, the Court turns to whether Plaintiff has sufficiently alleged a claim for monetary damages against Deutsche Bank, SPS, and HWA.[6] For the reasons that follow, the Court finds that Plaintiff has failed to state a claim.

---

[5] As discussed above, Judge Gary is entitled to sovereign immunity as to Plaintiff's claims for monetary damages against him in his official capacity. In the alternative, Judge Gary is also entitled to judicial immunity as to Plaintiff's claims for monetary damages in his official capacity.

[6] Separate from her asserted claims, Plaintiff also makes a brief passing reference to 42 U.S.C. Section 1983, Section 1985, and Section 1986. *See* Dkt. 7 at 6. Plaintiff alleges she "will prove there was a conspiracy to deprive her of property without the administration of justice, in violation of [P]laintiff's due process of law under Title 42 U.S.C. [Section] 1983 (Constitutional Injury), 1985 (Conspiracy) and 1986 . . . ." *Id.*

Plaintiff's allegations as to private actors Deutsche Bank, SPS, and HWA fail because private actors are not suable under Section 1983 without allegations that they acted in concert with state actors; Plaintiff has alleged no facts that Defendants were acting in concert with state actors. *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994)); *see also Howard v. Dixie Dunavant Ins. Agency*, 227

1.  *Breach of Contract*

In order to establish a breach of contract claim under Texas law, the plaintiff "must plead facts showing (1) the existence of a valid contract; (2) performance or tender of performance by [the plaintiff]; (3) breach by [the defendant]; and (4) damages resulting from the breach." *Obumseli v. Citimor[t]gage*, No. 4:12cv706, 2013 WL 3197911, at *2 (E.D. Tex. June 21, 2013), *R. & R. adopted*, 2013 WL 12153579 (E.D. Tex. Aug. 23, 2013) (citing *Cadillac Bar W. End Real Est. v. Landry's Rests., Inc.*, 399 S.W.3d 703, 705 (Tex. App.—Dallas 2013, no pet.) (internal citation omitted)); *see also Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.— Houston [1st Dist.] 2001, no pet.) (same). A claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (per curiam) (citing *Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 732 (E.D. Tex. 2011)).

Plaintiff asserts a breach of contract claim against Defendants, alleging "[n]o loan was provided to [Plaintiff], and [Defendants] failed to file evidence on the record to prove a contract existed. The original contract and an accounting of loan entries was never filed in the wrongful foreclosure case that was filed against [Plaintiff's] property." Dkt. 7 at 8. Plaintiff also alleges the promissory note "never became a registered security" because it was not "secured by a maritime lien on a prepaid trust account" and the promissory note in dispute "was sold to the Federal Reserve

---

F. App'x 363, 365 (5th Cir. 2007) (per curiam) ("The Supreme Court has held that 'merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'" (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980))).

Additionally, Section 1985(3) "criminalizes only conspiracies that involve depriving someone of 'equal protection of laws' or 'equal privileges and immunities under the laws.'" *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citing 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Thus, "[t]his kind of conspiracy requires some form of class-based discrimination" and, the Fifth Circuit has emphasized that "racial animus is required." *Id.* (collecting cases). Plaintiff fails to state such a claim because she does not allege any racial animus or class-based discrimination. Similarly, Plaintiff fails to state a Section 1986 claim on the basis she has failed to allege a Section 1985 claim. *Martinez-Bey v. Bank of Am., N.A.*, No. 3:12–cv–4986, 2013 WL 3054000, at *4 (N.D. Tex. June 18, 2013) (citing *Bradt v. Smith*, 634 F.2d 796, 801–02 (5th Cir. Unit A Jan. 1981)).

in exchange for [P]laintiff's signed note." *Id.* Plaintiff alleges "detrimental reliance" as she "signed a lien against [her] property in return for a loan and no loan was ever provided. [Plaintiff] was tricked into repaying approximately 900.00 a month plus taxes for 30 years." *Id.* at 10. Deutsche Bank and SPS argue that Plaintiff has failed to state a claim because "Plaintiff has not and cannot truthfully allege that she has complied with the terms of the contractual agreement that forms the basis of their claims and any contract claim fails on that basis alone." Dkt. 8 at 10. Deutsche Bank and SPS further argue Plaintiff has "not included facts alleging the contract she contends was breached, which party breached the contract, the provision of the contract that was breached or any other facts sufficient to allege a breach of contract claim." *Id.* HWA similarly argues Plaintiff has failed to state a claim as "Plaintiff has not and cannot allege the existence of a valid and enforceable contract between Plaintiff and HWA." Dkt. 17 at 14. HWA further argues that "[a]part from asking the Court to award $5,500,000.00 in damages, Plaintiff has not and cannot allege that she suffered damages that arose from the actions of HWA." *Id.* at 15.

Plaintiff has failed to state a breach of contract claim against Defendants. Plaintiff does not allege *the parties* to the contract, *the provisions* of the contract that were breached, and *her own tendering of performance* under the contract. *See Sandhar v. Grewal*, No. H-08-2348, 2009 WL 175073, at *4 (S.D. Tex. Jan 23, 2009) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to plead "the date of the contract, the parties to the contract, and the provisions of the contract allegedly breached."); *Burton v. Companion Prop. and Cas. Ins. Co.*, No. W-14-cv-054, 2014 WL 12490005, at *3 (W.D. Tex. July 29, 2014) (finding the plaintiff failed to comply with Rule 8 when the plaintiff could not point to a policy provision that covered the relevant claims or that defendant's action was relevant to a provision of the contract); *Cruz v. Bank of Am., N.A.*, No. 3:19-cv-340, 2020 WL 4561855, at *9 (N.D. Tex. July 10, 2020), *R. & R.*

*adopted*, 2020 WL 4569042 (N.D. Tex. Aug. 7, 2020) ("[I]t is not enough to generally allege the existence of a contract and generally allege that a contract has been breached. Instead, to state a plausible breach of contract claim a plaintiff must allege which provision of an identified contract has been breached.") (internal quotation and quotation marks omitted).

Furthermore, it appears Plaintiff's sole factual allegation as to her breach of contract claim is that Defendants were obliged to provide her the loan she signed with Ames Homes Loans in 2003, but never did.[7] *See* Dkt. 7 at 8. It is not clear from Plaintiff's allegations why or how Defendants were obligated to provide Plaintiff a loan she received from Ames Homes Loans. Furthermore, Plaintiff has not plausibly alleged a breach of contract claim against Defendants on the basis the loan was not provided to her, and her allegations regarding securitization are conclusory assertions without any plausible basis. *See Glass v. Finley*, No. 3:19-cv-1216, 2020 WL 741826, at *9 (W.D. La. Jan. 17, 2020), *R. & R. adopted*, 2020 WL 749139 (W.D. La. Feb. 13, 2020) ("Even so, the plaintiff's contention that he never received any consideration or benefit from the mortgage loan is not plausible . . . it simply is implausible that [the] plaintiff made principal and interest payments for seven years on a loan that he only now contends that he never received. The court will not indulge [the] plaintiff's fanciful allegation."); *Wagner v. CitiMortgage, Inc.*, No. 4:14-cv-657, 2014 WL 5786956, at *4 (N.D. Tex. Nov. 6, 2014) ("As far

---

[7] While it appears Plaintiff has included a discussion of detrimental reliance in connection to her breach of contract claim, the Court notes detrimental or reasonable reliance is an element of other claims such as fraud and negligent misrepresentation. *See Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 428 (5th Cir. 2010) (per curiam) ("Justifiable or reasonable reliance is an element of both fraud and negligent misrepresentation [under Texas law.]") (collecting cases); *see also Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex. App.—Corpus Christi 2001) (explaining reasonable reliance is an element of promissory estoppel, which is a "viable alternative to a breach of contract") (internal citation omitted).

While unclear, if Plaintiff is seeking to allege a negligent misrepresentation claim, she has failed to do so as she has not alleged the requisite misstatement of existing fact. *See Agri-Plastics, Inc. v. Hog Slat, Inc.*, No. 3:09-cv-1271, 2010 WL 711811, at *3 (N.D. Tex. Feb. 26, 2010) (finding negligent misrepresentation claim "cannot be based on promises to act or not act in the future, but rather must focus on misstatements of existing fact") (citations omitted); *Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 533 (N.D. Tex. 2016).

as the court can tell, the essence of this claim appears to be that [the] plaintiffs gave [the] defendant a promissory note, which [the] defendant then used to create money that it loaned to [the] plaintiffs, with the net result that defendant only loaned plaintiffs their own money . . . this claim is completely nonsensical and on its face, fails to state any claim for relief. Additionally, to state a claim for breach of contract requires [the] plaintiffs to show, *inter alia*, that they performed or tendered performance under the contract." (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009))).

Therefore, Plaintiff has failed to allege a breach of contract claim against Deutsche Bank, SPS, and HWA.

### 2. *"Scheme to Defraud" and "Unlawful Deception in the Original Foreclosure Case"*

"Under Texas law, the elements of fraud are '(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.'" *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

To state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b)'s particularity requirement generally requires the pleader set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell*

*Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (internal quotations omitted). Furthermore, Rule 9(b)'s particularity requirement supplements Rule 8(a), which "prohibits any claims that are merely conceivable rather than plausible." *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) (per curiam) (citing *Iqbal*, 556 U.S. at 680 (internal quotations omitted)). A claim is "merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and obvious alternative explanation." *Id.* (internal citation omitted). Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *See United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Plaintiff alleges a claim for "scheme to defraud" because "the defendant did not provide full disclosure, the contract is extremely deceptive and unconscionable." Dkt. 7 at 10. Plaintiff further alleges there was "unlawful deception in the original foreclosure case" because the "promissory note used to gain the court's jurisdiction in the wrongful foreclosure is fraudulent, the document was used in court as a security when it was never registered." *Id.* at 10–11. Deutsche Bank and SPS argue Plaintiff "has wholly failed to include any of this required information [i.e. the who, what, when, where, and how] in [the Amended] Complaint." Deutsche Bank and SPS also argue that Plaintiff has failed to state a fraud claim because "Plaintiff has not alleged any actionable damages caused by or that could be caused by any alleged actionable misrepresentation by Defendants." Dkt. 8 at 12. HWA argues Plaintiff has failed to state a fraud claim because "Plaintiff has not identified a misrepresentation on the part of HWA or any of its employees." Dkt. 17 at 16. HWA also argues Plaintiff "has urged a number of assertions of substantive law, most of

which are incorrect. She has wholly failed to identify any false representation made by any member of HWA." *Id.*

Plaintiff has failed to state a claim for fraud, as she has not met the heightened pleading requirements to state a claim for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff does not allege which Defendant "did not provide full disclosure" regarding the ostensible loan contract or how she relied on an alleged misrepresentation.[8] Dkt. 7 at 8. Plaintiff's pleadings are therefore not sufficient to state a claim for fraud. *See McElroy v. Ocwen Loan Servicing, LLC*, No. 4:14cv382, 2015 WL 2379314, at *3 (E.D. Tex. May 18, 2015) (collecting cases); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 714 (S.D. Tex. 2020) (finding the plaintiff failed to allege a fraud claim when the plaintiff failed to allege "when misrepresentations were made by which particular defendant."); *Lakiesha v. Bank of N.Y. Mellon*, No. 3:15-cv-901, 2015 WL 5934439, at *6 (N.D. Tex. Oct. 9, 2015) (granting motion to dismiss as the plaintiff's statement that the "purpose of the misrepresentations was to 'initat[e] the securitization process' . . . is unavailing because it reveals no reliance on the supposed misrepresentation by [the plaintiff] herself."); *Bennett v. JPMorgan Chase*, No. 3:12–CV–212, No. 2012 WL 2864751, at *5 (N.D. Tex. June 12, 2012), *R. & R. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012).

Therefore, Plaintiff has failed to state a fraud claim against Deutsche Bank, SPS, and HWA.

---

[8] Plaintiff also makes a number of legal assertions, including that the "promissory note is not listed on a maritime lien against the prepaid trust account and filed with the county recorder and put on a UCC1." Dkt. 7 at 9. "A maritime lien is a special property right in a vessel that 'developed as a necessary incident of the operation of vessels.'" *Liverpool and London S.S. Prot. & Indem. Ass'n Ltd. v. M/V ABRA*, 295 F. Supp. 2d 674, 680 (M.D. La. 2003) (quoting *Silver Star Enters., Inc. v. SARAMACCA MV*, 82 F.3d 666, 668 (5th Cir. 1996) (internal quotations omitted)). It is not clear how listing the promissory note on a maritime lien would be relevant to the alleged foreclosure of Plaintiff's real property—249 Ledbetter Lane, Denison, Texas—in the present case.

3. *RICO*

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO provides a civil cause of action for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). "Broadly stated, a civil RICO claimant must prove (1) a violation of the substantive RICO statute . . . and (2) an injury to the plaintiff's business or property by reason of a violation of section 1962." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 338 (5th Cir. 2021) (quotation and brackets omitted). To state a RICO claim under 18 U.S.C. Sections 1962(a)–(d), "there must be '(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (emphases omitted)). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam) (citing *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007))

Plaintiff alleges a civil RICO claim against Defendants, asserting "[t]he debt included the fact that exaction of a usurious interest rate [which] rendered the debt unlawful and that is all that is necessary to support the Civil RICO action." Dkt. 7 at 11. Deutsche Bank and SPS argue "Plaintiff . . . has failed to plead facts necessary to constitute the essential elements of a RICO claim and the attempted RICO claim should be dismissed." Dkt. 8 at 13. HWA argues "Plaintiff

has not alleged a pattern of racketeering activity or that HWA made any effort to acquire, establish, conduct, or control an enterprise." Dkt. 17 at 18.

Plaintiff fails to state a civil RICO claim against Defendants. Plaintiff's allegation as to her civil RICO claim is the conclusory assertion the debt was usurious. Even assuming *arguendo* such an act constituted a racketeering activity, Plaintiff has failed to allege a *pattern* of racketeering activity. *See Bonton v. Archer Chrysler Plymouth Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) ("Assuming, *arguendo*, that the acts alleged constitute 'racketeering activity,' the second essential RICO element cannot be established unless the acts establish a 'pattern' of racketeering activity. [The plaintiff] does not allege, much less sufficiently plead, facts establishing a relationship between the alleged episodes of criminal activity."); *Lee v. BONY*, No. 3:13–cv–1033, 2013 WL 4603584, at *3 (N.D. Tex. Aug. 9, 2013), *R. & R. adopted*, 2013 WL 4623608 (N.D. Tex. Aug. 29, 2013). Nor has Plaintiff alleged there was an enterprise, let alone an enterprise separate and apart from any alleged pattern of racketeering activity. *See Oblio Telecom, Inc. v. Patel*, No. 3:08–cv–0279, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) ("[The plaintiff] has also failed to plead any facts that show that there was an ascertainable structure separate and apart from achieving the predicate acts. [The plaintiff's] statements that the enterprise had a 'clear structure separate and apart from the predicate acts' are conclusory, and the Complaint does not plead facts that might support this conclusion."); *Morse v. Ditech Fin., LLC*, No. 4:16-cv-00279, 2017 WL 7051072, at *13 (E.D. Tex. Aug. 10, 2017), *R. & R. adopted*, 2017 WL 4230550 (E.D. Tex. Sept. 25, 2017) ("Here, [the plaintiff] does not establish a RICO claim, as he fails to allege or show the existence of an enterprise as defined by the RICO statutes . . . [The plaintiff] fails to show that either [of the defendants] operate through any hierarchal or consensual

decision-making process or that they exist separate and apart from any alleged pattern of racketeering activity.").

Therefore, Plaintiff has failed to state a civil RICO claim against Deutsche Bank, SPS, and HWA.

### 4. *Wrongful Foreclosure*

Under Texas law, the elements of a wrongful foreclosure claim are "'(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.'" *Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d. 403, 406 (5th Cir. 2017) (per curiam) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (internal citation omitted)). "A claim for wrongful disclosure is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect or that the defendant-mortgagee (lender) deliberately 'chilled' the bidding at the foreclosure sale." *Daniels v. Saucedo*, No. MO:21-cv-101, 2021 WL 6495244, at *6 (W.D. Tex. Nov. 17, 2021), *aff'd*, 2022 WL 6943343 (5th Cir. 2022) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 727 (5th Cir. 2013)).

Plaintiff asserts a claim for wrongful foreclosure against Defendants because "[t]he foreclosing party did not have standing to file [a] foreclosure [suit] because they have not filed evidence on the court record to verify a loan was made and or what the amount and terms of the alleged loan stated." Dkt. 7 at 12. Deutsche Bank and SPS argue "Plaintiff does not assert any factual basis establishing the elements required for a wrongful foreclosure claim. Plaintiff has not and cannot establish any evidence of an irregularity with the foreclosure sale in question or that any such irregularity ca[u]sed a grossly inadequate bid amount." Dkt. 8 at 13. Similarly, HWA

argues "Plaintiff has not alleged facts that indicate a defect in the foreclosure process, has not identified the actual price paid for the property at sale or alleged that it was grossly inadequate, and has not alleged facts that demonstrate a causal connection between <u>any</u> defect and the sale price." Dkt. 17 at 19.

Plaintiff's allegation regarding the alleged failure to file evidence on the court record to verify a loan was made does not give rise to a wrongful foreclosure claim. *See Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010) ("[The plaintiff] has no legal ground for a wrongful foreclosure claim based on the failure to record the deed of trust in the county real property records . . . Under Texas law, there is no requirement that the deed of trust assignment be recorded. And under Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded.") (internal citation omitted). Furthermore, Plaintiff does not allege that her home sold for a grossly inadequate selling price or a causal connection between a defect in the foreclosure sale and the grossly inadequate selling price. *See Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) ("The district court correctly determined that [the plaintiff] had failed to state a claim for wrongful foreclosure . . . In particular, he failed to allege (1) that his home sold for a grossly inadequate selling price and (2) a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price.") (citation omitted); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) ("Although [the plaintiff] alleges that there were procedural defects in the foreclosure sale, she alleges only that the foreclosure sale was not commercially reasonable and does not allege that the property was sold for a grossly inadequate price . . . Moreover, she does not allege a causal connection between the alleged defects in the foreclosure sale and any grossly inadequate selling price.");

*Palomino v. Wells Fargo Bank, N.A.*, No. 6:15-CV-00375, 2017 WL 989300, at *4 (E.D. Tex. Feb. 17, 2017), *R. & R. adopted*, 2017 WL 978930 (E.D. Tex. Mar. 14, 2017) (collecting cases).

Therefore, Plaintiff fails to state a wrongful foreclosure claim against Deutsche Bank, SPS, and HWA.

   5.  *Slander of Title*

"To state a slander of title claim under Texas law, [the plaintiffs] must establish: '(1) the uttering and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby; (5) that the plaintiff possessed an estate or interest in the property disparaged; and (6) the loss of a specific sale' of the Property due to the uttering and publishing of the allegedly disparaging words." *Slocum v. Sebring Capital Partners, LP*, No. 4:18-cv-29, 2018 WL 3470300, at *10 (E.D. Tex. June 27, 2018), R. & R. adopted, 2018 WL 3460245 (E.D. Tex. July 17, 2018) (quoting *Emeribe v. Wells Fargo Bank, N.A.*, No. H-12-2545, 2013 WL 140617, at *3 (S.D. Tex. Jan. 10, 2013)).

Plaintiff alleges a slander of title claim against Defendants because "[D]efendants have caused to be recorded various documents including an unlawful foreclosure which constitutes slander of title." Dkt. 7 at 13. Deutsche Bank and SPS argue Plaintiff "has not and cannot truthfully allege the requisite elements of [a slander of title] claim . . . ." Dkt. 8 at 14. Similarly, HWA argues "Plaintiff's slander of title claim fails because she has not identified a specific pending sale that was lost because of any filing by HWA." Dkt. 17 at 20.

Plaintiff fails to state a slander of title claim. Plaintiff does not allege the loss of a specific sale of property due to the alleged recording of "various documents including an unlawful foreclosure" or any facts suggesting the wrongful foreclosure was malicious. *See Sheets v. Wells Fargo Bank, N.A.*, No. 3:12-cv-4534, 2013 WL 5914404, at *4 (N.D. Tex. Sept. 11, 2013) ("[The

plaintiff] alleges that [the defendant's] publication of 'various documents,' including its notice of a trustee's sale, constituted slander of title. But he has failed to allege any facts suggesting that the publication was malicious, he has not asserted that he suffered any special damages, and he has pled no facts suggesting that he lost a specific sale."); *McLaughlin v. Wells Fargo Bank, N.A.*, No. 4:12-cv-2658, 2013 WL 5231486, at *3 (S.D. Tex. Sept. 13, 2013) ("Without a potential buyer, Plaintiff cannot claim that he lost a specific sale or suffered damages, essential elements of a claim for slander of title."); *Cantu v. Federal Home Loan Mortg. Corp.*, No. M-12-103, 2012 WL 13054833, at *3 (W.D. Tex. Sept. 17, 2012) ("Like the original petition, the response also fails to address the legal malice element. Furthermore, it does not allege the loss of a specific sale. [The plaintiffs] have presented no authority indicating that an inability to borrow money satisfies the loss of sale requirement. But even if the inability to borrow money could theoretically satisfy the loss of sale element, [the plaintiffs] have failed to allege a *specific instance* when they were unable to borrow money.").

Therefore, Plaintiff has failed to state a slander of title claim against Deutsche Bank, SPS, an HWA.

6. *Texas Deceptive Trade Practices-Consumer Protection Act*

To establish a Texas Deceptive Trade Practices Act ("DTPA") claim, the plaintiff must allege facts showing: "(1) [the] plaintiff is a consumer; (2) [the] defendant can be sued under the DTPA; (3) [the] defendant committed a wrongful act proscribed by the DTPA; and (4) [the] defendant's wrongful act was the producing cause of plaintiff's damages."[9] *Smith v. Bank of Am., NA*, No. 4:12-cv-724, 2013 WL 4627689, at *7 (E.D. Tex. Aug. 28, 2013), *R. & R. adopted*, 2013 WL 9816396 (E.D. Tex. Sept. 30, 2013) (citing Tex. Bus. & Comm. Code §§ 17.41 et seq.). "A

---

[9] The full title for the DTPA is the Deceptive Trade Practices-Consumer Protection Act. *See* Tex. Bus. & Comm. Code § 17.41.

mortgagor qualifies as a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint." *Miller*, 726 F.3d at 725.

Plaintiff alleges "[D]efendants have engaged in a pattern of unfair practices in violation of the Texas Revised Statutes [S]ection 17.41 Texas Business and Commerce Code, Consumer [P]rotection Act, et seq." Dkt. 7 at 13. Deutsche Bank and SPS argue Plaintiff fails to state a claim because "[a] pure loan transaction lies outside the DTPA based on the logic that money is neither a good nor a service. A plaintiff complaining about alleged improprieties relating to her mortgage is not a consumer under the DTPA." Dkt. 8 at 15. HWA similarly argues Plaintiff has failed to state a claim because "a person complaining of the servicing, modification, or foreclosure of a mortgage loan is not a 'consumer' under the DTPA." Dkt. 17 at 21.

In the present case, Plaintiff's allegations relate to an alleged mortgage loan and Plaintiff does not allege the loan was to acquire good or services. This is not sufficient to state a claim under the DTPA. *See Marshall v. Bank of Am.*, No. 4:13cv113, 2014 WL 12561626, at *5 (E.D. Tex. Feb. 14, 2014), *R. & R. adopted*, 2014 WL 12576782 (E.D. Tex. Mar. 28, 2014) ("[The] [p]laintiff's complaint does not allege that he is a consumer. And, even if the Court were to construe his *pro se* pleadings to state consumer status, Plaintiff cannot base his claim on a loan. No DTPA claim has been stated.") (citations omitted); *James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 447 (5th Cir. 2013) (per curiam) ("The district court held, and we agree, that [the] plaintiffs' TDTPA claim fails as a matter of law because [the] plaintiffs are not 'consumers' within the meaning of the Act, and they did not seek or acquire 'goods or services' as defined by the Act."); *Smith*, 2013 WL 4627689, at *8 ("Here, [the plaintiff] argues that she is a consumer because she received loan servicing from [the defendant]. This is not enough to state a claim under the

DTPA.") (citation omitted); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006).

Therefore, Plaintiff has failed to state a DTPA claim against Defendants.

### 7. *Slander of Credit*

Plaintiff alleges a claim for slander of credit against Defendants because "the actions and inactions of [Defendants] have impaired [Plaintiff's] credit causing [Plaintiff] to lose the ability to have good credit." Dkt. 7 at 13. HWA argues the Fair Credit Reporting Act ("FCRA") preempts a slander of credit claim and, to avoid preemption, the plaintiff must demonstrate the defendant furnished the false information in question with malice or willful intent to injure. *See* Dkt. 17 at 21.

Several federal courts in Texas have found the FCRA preempts defamation actions related to credit reporting. *See Daniels*, 2021 WL 6495244, at *6 ("In the context of a 'slander of credit claim,' Texas federal courts dismiss such claims where plaintiffs have failed to sufficiently plead a claim for slander of credit under the Fair Credit Reporting Act . . . because the plaintiffs have not alleged that a consumer reporting agency reported an inaccuracy to defendant and that defendant failed to correct this inaccuracy." (citing *Smith v. Nat'l City Mortg.*, A-09-cv-881, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010), *R. & R. adopted*, 2010 WL 11652114 (W.D. Tex. Sept. 10, 2010))); *Sheets*, 2013 WL 5914404, at *4 ("[The plaintiff] alleges that [the defendant's] actions have damage his credit rating. The[FCRA], however, preempts his claim . . . To avoid FCRA preemption, a plaintiff must demonstrate that the defendant furnished the false information in question with malice or willful intent to injure.") (citing 15 U.S.C. § 1681h(e); *Morris v. Equifax Info. Servs.*, LLC, 457 F.3d 460, 471–72 (5th Cir. 2006)). Other courts have considered a plaintiff's slander of credit claim under the negligence standard of defamation. *See,*

*e.g.*, *Payne v. Wells Fargo Bank, N.A.*, No. 3:12–CV–5219, 2013 WL 5451856, at *8 (N.D. Tex. Sept. 27, 2013) ("[I]n order to maintain a defamation claim, a plaintiff must allege: (1) a false statement was made about the plaintiff; (2) the statement was published to a third party without legal excuse; and (3) the plaintiffs reputation was damaged as a result." (citing *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006))).

Even under the negligence standard, Plaintiff has failed to allege the requisite elements, as she only alleges the conclusory assertion that Deutsche Bank, SPS, and HWA's actions and inactions impaired her credit. *See Payne*, 2013 WL 5451856, at *8 ("Nowhere in her Amended Petition or in her response does [the plaintiff] allege that [the defendant] made a false statement about [the plaintiff]. Indeed, [the plaintiff] admits that the foreclosure sale actually occurred . . . [the plaintiff] has failed to allege sufficient facts to support a claim for slander of credit, thus, this claim should be dismissed.").

Therefore, Plaintiff has failed to state a slander of credit claim against Deutsche Bank, SPS, and HWA.

### 8. *Intentional and Negligent Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, Texas law requires the following four elements be alleged: "(1) that the defendant acted intentionally or recklessly; (2) that the conduct was 'extreme and outrageous'; (3) that the actions of the defendant caused the plaintiff emotional distress; and (4) that the emotional distress suffered by the plaintiff was severe." *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142 (5th Cir. 1991) (quotation omitted); *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002) (internal quotation marks and citations omitted). "[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*,

33

157 S.W.3d 814, 816 (Tex. 2005) (internal quotation omitted). However, "Texas does not recognize the tort of negligent infliction of emotional distress." *Hirras v. Nat'l R.R. Passenger Corp.*, 44 F.3d 278, 280 n.3 (5th Cir. 1995) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)). Therefore, the Court turns only to whether Plaintiff has alleged a claim for intentional infliction of emotional distress.

Plaintiff alleges a claim for intentional infliction of emotional distress because "[Defendants] have intentionally or negligently taken actions which have cause [Plaintiff] severe emotional distress." Dkt. 7 at 13–14. Deutsche Bank and SPS argue Plaintiff cannot state a legally viable claim for intentional infliction of emotional distress. Dkt. 8 at 16. HWA also argues Plaintiff fails to state an intentional infliction of emotional distress claim because Plaintiff "simply does not allege conduct on the part of HWA that rises to the level of 'outrageous' or 'extreme.'" Dkt. 17 at 23.

In the present case, Plaintiff's only allegation related to her intentional infliction of emotional distress claim is merely a conclusory statement that Defendants caused Plaintiff severe emotional distress. *See Iqbal*, 556 U.S. 662 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (citation omitted). Moreover, courts have uniformly found that the enforcement of contractual rights to foreclose on a deed of trust does not meet the "high bar of 'outrageous' behavior." *Auriti v. Wells Fargo Bank, N.A.*, No. 3:12–cv–334, 2013 WL 2417832, at *8 (S.D. Tex. June 3, 2013) (citing *Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 159 (Tex. App. —Texarkana 1994, writ denied); *Robinson v. BAC Home Loan Servicing, LP*, No. H–10–5168, 2011 WL 2490601, at *5–6 (S.D. Tex. June 21, 2011)). Furthermore, "even improper conduct that might in other situations constitute bad faith or invalidate a foreclosure—such as

allegations that the bank violated part of the loan agreement, refused to negotiate, promised and then denied the plaintiff a loan modification, or that its bureaucracy generally made the plaintiff's life miserable—will not support an intentional infliction claim." *Id.* (collecting cases); *see also Lakiesha*, 2015 WL 5934439, at *7 ("[The plaintiff] does argue that the foreclosure was wrongful and that it was done in bad faith, but 'even improper conduct that might in other situations constitute bad faith or invalidate a foreclosure . . . will not support an intentional infliction claim.'" (quoting *Auriti*, 2013 WL 2417832, at *8) (internal quotation omitted)); *Daniels*, 2021 WL 6495244, at *7; *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (holding extreme and outrageous conduct to support an intentional infliction of emotional distress claim is that which is "'so extreme in degree, and so outrageous in character, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.'" (quoting Restatement (Second) of Torts § 46, cmt. d (1965))).

Therefore, Plaintiff cannot allege a negligent infliction of emotional distress claim, nor has she alleged an intentional infliction of emotional distress claim, against Deutsche Bank, SPS, and HWA.

### E.  Attorney Immunity

Attorney immunity precludes liability for attorneys acting within the bounds of the law and zealously representing their client. *See Campbell v. Mortg. Elec. Reg. Sys., Inc.*, 2012 WL 1839357, at *5–6 (Tex. App.—Austin 2012, pet. denied). Furthermore, dismissal based on the attorney immunity defense is proper when "the scope of the attorney's representation—and thus entitlement to the immunity—[i]s apparent on the face of the complaint." *Burke v. Ocwen Loan Servicing, LLC*, 855 F. App'x 180, 186 (5th Cir. 2021) (per curiam) (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)).

HWA asserts it is entitled to attorney immunity because "Plaintiff's only allegation of actual conduct by HWA is that HWA filed a civil action in state court . . . Filing a civil action is an activity that lies firmly within the scope of representing the mortgagee of a home equity security instrument during a foreclosure proceeding." Dkt. 17 at 24.

As HWA correctly asserts, Plaintiff's only allegations as to HWA are regarding HWA's representation of Deutsche Bank and SPS in the alleged foreclosure action. *See* Dkt. 7 at 15 ("This civil action filed against [Plaintiff] in State court was 'Fraudulent' because the attorneys are claiming a 'Corporation' has rights, privileges, and immunities in court, [but] common knowledge dictates a [c]orporation is an artificial person without natural rights."). HWA is entitled to attorney immunity for such allegations. *See Krishnan v. Zaidi*, No. 4:19-CV-0063, 2019 WL 5691986, at *12 (E.D. Tex. Aug. 16, 2019), *R. & R. adopted*, 2019 WL 4686363 (E.D. Tex. Sept. 26, 2019) ("Representing a mortgage company and filing a foreclosure action against homeowners who have defaulted on their loan is clearly the kind of conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit.") (internal quotation and quotation marks omitted); *see also Stanford*, 2022 WL 671024, at *4  ("[The plaintiff] expressly names them as such: Attorney and Law Firm. Plaintiff's live pleading claims [the defendants] engaged in a conspiracy to foreclose on her home and engaged in the fraudulent state civil action . . . However, '[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483 (Tex. 2015))); *Gipson v. Deutsche Bank Nat'l Tr. Co.*, No 3:13-cv-4820, 2015 WL 2079514, at *7 (N.D. Tex. May 4, 2015) ("Representing a mortgagee by initiating foreclosure proceedings and filing a foreclosure action against a defaulting homeowner clearly falls within the scope of an attorney's duties in representing his client.")

(internal citation omitted); *Villanueva v. Wells Fargo Home Mortg.*, No 4:16-CV-320, 2016 WL 3917641, at *2 (E.D. Tex. Jul. 20, 2016) ("This protection has been extended to include attorneys bringing foreclosure proceedings on behalf of their clients.") (internal citations omitted).

Therefore, the Court finds HWA is entitled to attorney immunity.

### F.  Plaintiff's Motions

For the reasons set forth above, the Court is divested of jurisdiction over claims against the State of Texas and Judge Gary; and HWA is entitled to attorney immunity as to Plaintiff's claims for monetary damages. Furthermore, Plaintiff has failed to allege a claim against Deutsche Bank, SPS, and HWA. Additionally, this case is in its infancy and there has been no discovery. Accordingly, the Court recommends Plaintiff's Motion for Summary Judgment (Dkt. 23) be denied without prejudice. *See Dunn v. Sucsy*, NO. 5:22-cv-190, 2022 WL 17408005, at *2–3 (N.D. Tex. Nov. 9, 2022), *R. & R. adopted*, 2022 WL 17407993 (N.D. Tex. Dec. 2, 2022) (collecting cases).

Regarding Plaintiff's Motion to Compel Discovery (Dkt. 18) and Plaintiff's Motion for Hearing (Dkt. 32), the Court finds it appropriate to order that these motions be denied without prejudice. Plaintiff has failed to sufficiently allege a cause of action upon which discovery may be warranted and, thus, Plaintiff's Motion to Compel Discovery (Dkt. 18) is premature. Regarding Plaintiff's Motion for Hearing (Dkt. 32), Plaintiff does not assert any request for a hearing or explain why she is requesting such a hearing; rather, Plaintiff reasserts her claims and responds to Judge Gary's Motion to Dismiss (Dkt. 27). *See* Dkt. 32. Additionally, Plaintiff has failed to assert a viable cause of action and, therefore, a hearing as to her claims is premature.

### G.  Leave to Amend

As a final matter, the Court considers whether Plaintiff should be afforded an opportunity to amend her claims against Defendants. Generally, a *pro se* plaintiff should be allowed to amend her complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)); *see also* FED. R. CIV. P. 15(a)(2) (providing "[t]he court should freely give leave when justice so requires"). However, a court has discretion not to allow amendment when an amendment would be futile. *See Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999).

In the present case, all of Plaintiff's claims against the State of Texas and Judge Gary are barred by the *Rooker-Feldman* doctrine and Eleventh Amendment sovereign immunity. Additionally, Judge Gary is entitled to judicial immunity. Thus, it would be futile to give Plaintiff leave to amend her claims against the State of Texas and Judge Gary. Plaintiff has also failed to state a claim against HWA, and the Court finds HWA is entitled to attorney immunity in its role as attorney for Deutsche Bank and SPS. Thus, it would be futile to allow Plaintiff to amend her claims against HWA.

Finally, as to Deutsche Bank and SPS, Plaintiff has failed to state a claim; and Plaintiff cannot state a claim under the DTPA and for negligent infliction of emotional distress. While Plaintiff amended her complaint once in response to Deutsche Bank and SPS's First Motion to Dismiss (Dkt. 6), this is the Court's first opportunity to assess the sufficiency of Plaintiff's claims. Therefore, the Court recommends Plaintiff be given leave to amend her claims against Deutsche Bank and SPS for: breach of contract; fraud; RICO; wrongful foreclosure; slander of title; slander of credit; and intentional infliction of emotional distress.

## IV.  RECOMMENDATION

The Court recommends Judge Gary's Motion to Dismiss (Dkt. 27) be **GRANTED IN PART** and **DENIED IN PART** as follows: Plaintiff's claims for monetary damages against Judge Gary in his official capacity be **DISMISSED WITHOUT PREJUDICE** and, to the extent Plaintiff is asserting such a claim, Plaintiff's claims for monetary damages against Judge Gary in his individual capacity be **DISMISSED WITH PREJUDICE**. Additionally, the Court recommends Plaintiff's request for equitable or declaratory relief regarding the state court foreclosure proceedings and judgment as to all Defendants be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction under the *Rooker-Feldman* doctrine. The Court further recommends Texas's Motion to Dismiss (Dkt. 16) be **GRANTED**, and Plaintiff's claims for monetary damages against the State of Texas be **DISMISSED WITHOUT PREJUDICE**. The Court recommends HWA's Motion to Dismiss (Dkt. 17) be **GRANTED**, and Plaintiff's claims for monetary damages against HWA be **DISMISSED WITH PREJUDICE**.

The Court recommends Deutsche Bank and SPS's Motion to Dismiss (Dkt. 8) be **GRANTED IN PART AND DENIED IN PART** as follows: Deutsche Bank and SPS's Motion to Dismiss be **GRANTED** as to Plaintiff's claims for monetary damages against Deutsche Bank and SPS under the DTPA and for negligent infliction of emotional distress, and these claims be **DISMISSED WITH PREJUDICE**; and Deutsche Bank and SPS's Motion to Dismiss be **DENIED WITHOUT PREJUDICE** as to Plaintiff's remaining claims for monetary damages against Deutsche Bank and SPS. The Court further recommends Plaintiff be **GRANTED** leave to amend her remaining claims for monetary damages against Deutsche Bank and SPS in accordance with this Report and Recommendation, with the amended pleading due no later than fourteen (14) days after entry of a Memorandum Adopting this Report and Recommendation, if any.

Finally, the Court recommends Plaintiff's Motion for Summary Judgment (Dkt. 23) be **DENIED WITHOUT PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

## V.   ORDER

It is **ORDERED** that Plaintiff's Motion to Compel Discovery (Dkt. 18) and Plaintiff's Motion for Hearing (Dkt. 32) be **DENIED WITHOUT PREJUDICE**.


**So ORDERED and SIGNED this 6th day of February, 2023.**

_____

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

40